FbeemaN, J.,
delivered the opinion of the court:
This is an action of ejectment to recover a house and lot in the city of Nashville. The facts are agreed on between counsel, and raise the simple question as to whether Warren Kelly, an illegitimate son of Kachel Jackson, could inherit her real estate at the date of her death, in 1864. The court below charged that he could not. The question is, was this correct or not?
The first question to be settled in the decision of the point, is whether the act of 1819, ch. 13, sec. 1, was in force at the death of said Rachel, in 1864. This act provided for descent of the property of the mother to natural bom children, where there were no legitimate children.
It is conceded rightly by counsel that this act is not found in the Code, then in operation, as embodying the statute law of the state up to the time of its enactment, and going into operation on 1st of May, 1858. It is insisted, however, that this act of 1819, was continued in force — at any rate not repealed by virtue of sec. 41, ch. 2 of the Code [Shannon’s Code, sec. 58], which is as follows: “All public and general acts passed prior to the present session of the general assembly, and all public and special acts the subjects whereof are revised in this Code, except acts establishing and regulating special courts, subject to the limitations, and with the exceptions herein expressed, are hereby repealed; and in case of any conflict between the acts of this session and this Code, the latter shall be controlling.”
What was the character of the act of 1819? Unquestionably, it was a “public and general act,” as public and general as any other act of the legislature on the subject of descent. It established the rule for every case in the state where the facts brought it within the terms of the statute, exactly as is provided in the various acts regulating descents in other cases. This being so, it is repealed and comes *200 within said sec. 41, "all public and general acts, etc., are repealed.”
This view is strengthened by the fact that, in 1866 and 1867, the legislature re-enacted the act of 1819, adding to its provisions, that the natural born child took the estate, even though there might be legitimate children of the same mother. This is a strong legislative construction of what the statute law of the state was deemed to be at the time, though it is not conclusive.
We have looked carefully at the general provisions of our Code on the subject of descents, to see if the language indicates any purpose to incorporate or recognize the act of 1819 as included in them. We can find no such purpose. On the contrary, we find this court has definitely laid down the rule that they do not apply to illegitimates. The language of Judge McKinney, in the case of Webb and wife v. Webb, 3 Head, 68, 70, is: "The general laws of descent, it must be remembered, do' not, in general, apply to illegitimates, unless embraced in terms, or by necessary implication.”
This was said in construing the Oode, sec. 2423 [Shannon’s Code, sec. 4166], on this very subject. That this was the well-known doctrine of our courts, is beyond all dispute. It is also certain that the judges who have set on this bench, educated m the stern rules of the common law, felt no great disposition to mitigate its rules in favor of natural born children. Judge Caruthers says, in Woodward Ex’r. v. Duncan et al., 1 Cold., 564: “We are not disposed to go beyond the legislature in removing the checks upon illicit intercourse, and the stigma from bastardy. The cause of good morals forbids it.”
We cite this remark as indicating the views of judges on the question about the period of the adoption of the Code, and perhaps this may account for the fact that the provisions of the act of 1819 were left out by the revisers of our statutes, and the legislature that enacted the Code. We deem it proper to add that we. do not agree with the *201 learned judge in bis views, but tbink tbe soundest justice would demand that tbe illegitimate should inherit from bis mother, and, further, that the cause of good morals would not receive the least injury from such policy. Our legislature in 1866 and 1867 have so enacted, and we think wisely. [See Acts 1866-67, ch. 36, sec. 10;;> Shannnon’s Code, sec. 4169.]
We need but refer to ,the argument of counsel, that the legislature could not repeal the act of 1819 so as to affect the rights of illegitimates already born.
There can be nothing in this. The child, whether legitimate or illegitimate, has no vested right to his ancestors property until he dies. The parent may dispose of it in any way he chooses, until the descent is cast. If the principle was sound, it would equally apply to all persons who might inherit under existing laws at their birth, and the legislature would be inhibited from repealing or changing the laws of descent in such cases.
The legislature has complete control over this question, except after descent cast, and the rule of law in existence at the death of the ancestor must be looked to in ascertaining the rights of parties claiming as heirs or distributees. This ease is one that might appeal strongly to our feelings, but these can furnish no guide for a judicial decision. Better allow one or many to suffer apparent or even real injustice than attempt, by strained construction, to warp the rules of law from a right line to meet hard eases; as we have said several times, that attempting to meet the exigencies of hard cases makes hard precedents, which we may find great difficulty in applying in the general administration of the law. Suffice it to say, we find the law settled as we have stated it, and the rights of the parties must be governed by it, regardless of the question of abstract justice, or the apparent hardship of the case.
Affirm the judgment.